UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR BARAJAS,<br><br>        Plaintiff,<br><br>    v.<br><br>CPC LOGISTICS SOLUTIONS, LLC, et al.,<br><br>        Defendants. | Case No. 22-cv-03911-WHO<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: Dkt. No. 19 |

In this class action, plaintiff Oscar Barajas alleges that defendants CPC Logistics Solutions LLC, CPC Logistics, Inc, and Newco Distributors, Inc. ("CPC") violated California law by failing to provide compliant meal and rest breaks, overtime pay, wage statements, and timely final wages, as well as failed to reimburse business expenses. At issue now is his motion to remand: he asserts that defendants have failed to allege that there is in excess of $5 million in controversy, which would allow this case to be in federal court pursuant to the Class Action Fairness Act ("CAFA"). CPC has the burden to establish the amount-in-controversy. CPC used a 100% violation rate for the derivative wage statement and penalty claims in order to meet that burden even though the parties agreed to use a 20% violation rate for the missed meal and rest breaks. Its use of the 100% violation rate is not warranted under these circumstances and I GRANT the motion to remand.

**BACKGROUND**

This wage and hour class action as removed from Alameda County Superior Court to this Court on July 1, 2022. Dkt. No. 1. In support of the Notice of Removal, and in support of the Opposition to the Motion to Remand, defendants rely on the declarations of Bill Steimel and Leslie Gomez. *See* Steimel Second Decl., Dkt. No. 1-1, 27-2 (estimating number of wage statements issued to different categories of employees employed during relevant time frame); *see*

*also* Gomez Decl., Dkt. Nos. 1-3 & 27-1 (declaring employees of CPC Logistics Solutions LLC "generally" work fulltime, 8 hours a day 5 days a week; truck drivers make up more the 85% of workforce and "vast majority" work over 8 hours a day; that 900 putative class members terminated employing during prior 3 years; and that spread over 5 days, the 900 or 1100 putative class members on average worked just under 40 hours per week). Plaintiff has moved to remand because defendants have failed to reasonably support their assertion that the amount in controversy meets or exceeds the $5,000,000 CAFA floor.

## LEGAL STANDARD

A defendant may remove a class action from state to federal court by filing a notice of removal that lays out the grounds for removal. 28 U.S.C. § 1453(b); 28 U.S.C. § 1446(a). The district court must remand the case to state court if it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). For federal jurisdiction under CAFA, the amount in controversy must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2)(A). The amount in controversy in the litigation can include "damages, costs of compliance with injunctions, attorneys' fees awarded under contract or fee shifting statutes ... [and] future attorneys' fees recoverable by statute or contract." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018).

The Ninth Circuit applies "the longstanding rule that the party seeking federal jurisdiction on removal bears the burden of establishing that jurisdiction." *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 686 (9th Cir. 2006). When the plaintiff challenges the amount-in-controversy allegations in a notice of removal, parties should submit proof so that the court can determine whether the jurisdictional amount has been shown by a preponderance of the evidence. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553-54 (2014); *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (noting that after the amount in controversy has been challenged, the parties may submit affidavits, declarations, or other summary-judgment-type evidence to the court). If the complaint does not include an amount in controversy, the defendant has the burden to "persuade the court that [its] estimate of damages in controversy is a reasonable one." *Ibarra*, 775 F.3d at 1197. The plaintiff's motion to remand will

not be successful if it merely challenges the defendant's assumptions without asserting an alternative. *Id*. at 1199.

The plaintiff can contest the amount in controversy by making either a "facial" or "factual" attack on the defendant's jurisdictional allegations. *See Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020). "A 'facial' attack accepts the truth of the [defendant's] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Id*. (quoting *Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014)). A factual attack "contests the truth of the . . . allegations" themselves. *Id*. (citation omitted). When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold. *Ibarra v. Manheim Investments, Inc*., 775 F.3d 1193, 1197 (9th Cir. 2015) (citing *Dart*, 574 U.S. at 88–89). Both parties may submit evidence supporting the amount in controversy before the district court rules. *Salter*, 974 F.3d at 963; *Ibarra*, 775 F.3d at 1197.

A defendant need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty. *See Dart*, 574 U.S. at 88–89; *see also Arias*, 936 F.3d at 925. Nonetheless, the burden of demonstrating the reasonableness of the assumptions on which the calculation of the amount in controversy was based remained at all times with defendant. The preponderance standard does not require a district court to perform a detailed mathematical calculation of the amount in controversy before determining whether the defendant has satisfied its burden. Rather, "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. The district court should weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own. After considering any evidence put forth by the parties, and assessing the reasonableness of the defendant's assumptions, "the court then decides where the preponderance lies." *Id*. (citation omitted).

3

# DISCUSSION

## I. HOURLY BASE RATE/STEIMEL DECLARATION

Plaintiff first challenges CPC's use of $27.72 as the average hourly base rate for putative class members in order to support defendants' estimate of the amount in controversy. Mot. at 9-12; Dkt. No. 1-1. Plaintiff proposes, instead, an average wage rate based on his own average; $22.75. *Id*. at 11. In opposition, CPC agrees to use $22.75 as the average base rate to calculate the amount in controversy. Oppo. at 10 n.2.

## II. VIOLATION RATE

Whether defendants' estimate of the amount in controversy exceeds CAFA's $5,000,000 floor turns on whether defendants have proposed reasonable rates of violation for the claims asserted. Defendants' amount in controversy calculation is based on:

- 100% violation rate for the derivative wage statement claim = **$732,050**.

Defendants assume at least one violation of one of plaintiff's four substantive theories (unpaid minimum wage, unpaid overtime, missed meal period, or missed break period) for each pay period worked by each 491 putative class members between May 16, 2021 and June 11, 2022.

- 100% violation rate for the waiting time penalties = $**4,914,000**.

Defendants assess a maximum 30 day waiting time penalty and an average of 8 hours per day for each of the 900 class members who terminated employment during the three years prior to the date the action commenced.

- 20% violation rate for the missed meal and rest break claims = **$833,048.80**

Meaning for each pay period, each class member missed at least one meal and one rest break.

Defendants do not address or otherwise contest plaintiff's estimate for the unpaid minimum wage/overtime claim, **$1,701,114**. Mot. at 22; Reply at 9. Plaintiff does not contest the meal and rest break amount proffered by defendants, **$833,048.80**, based on a 20% violation rate. Reply at 9.[1] Finally, plaintiff does not dispute the number of current or former employees

---

[1] Plaintiff also agrees with defendants' inclusion of defendant Newco's amount in controversy for the meal and rest period claims. *See* Oppo. at 13-15; Reply at 2.

4

including in any of defendants' revised Opposition calculations.

Therefore, the only matters in dispute are defendants' use of the 100% violation rate for the wage statement and waiting time penalty calculations. Defendants do not provide evidence – other than considering the hours plaintiff Barajas worked, identifying the outer-limits of the potential class sizes for employed and terminated employees, and noting that class members averaged just under 40 hours of work each week – to support their use of 100% violation rates for these two calculations. Plaintiffs do not contest defendants' evidence regarding Barajas's work schedules, the number of putative class members for the claims, or the average hours worked. But that evidence is not tied to and cannot support the defendants' use of a 100% violation rate for the waiting time and wage statement claims.

Defendants rest their use of the 100% violation rates solely on the "broad allegations" in plaintiff's complaint, referring to defendants' "policies and practices" of violating the wage and hour laws asserted. The supposedly broad allegations identified by defendants in support are: (i) defendants' "unlawful policies of automatically deducting meal periods, rounding time entries, and uncompensated off-the-clock work" led to deficiencies in wage statements that failed to "reflect true total hours," Oppo. at 6 (citing Compl. ¶ 82); (ii) defendants failed to provide wage statements that "listed the correct name and address of the legal entity that is the employer," *id*. (citing Compl. ¶ 85); (iii) defendants "fail to pay final wages upon separation," *id*. at 8 (citing Compl. ¶ 94); and (iv) "final payments once provided to Class Members do not include all wages owed" based on the other alleged wage and hour violations. *Id*. at 9 (citing Compl. ¶ 95). These allegations alone are not so broad to imply that each putative class member suffered a wage statement violation for every pay period or that the maximum waiting time penalties could be awarded as defendants have assumed.

Alone, broad allegations in a complaint do not typically justify a 100% violation rate for either the waiting time penalty or wage statement violations. *See, e.g., Ramirez v. HV Glob. Mgmt. Corp*., No. 21-CV-09955-BLF, 2022 WL 1210402, at *5 (N.D. Cal. Apr. 25, 2022) (applying 25% violation rate and rejecting defendants' proffered 100% violation rate for waiting time penalties, where "Defendants provide little justification for assuming a 100% violation rate.

1    The Court finds it highly unlikely that each of the 88 hourly employees who separated from

2    employment from Defendants during the relevant period was entitled to 8 hours of pay for 30 days

3    in penalties"); *id*. at \*7 (adopting 25% violation rate and rejecting 100% violation rate, despite

4    "that Plaintiff's allegations of Labor Code violations are extensive, that does not justify assuming

5    th[at] every wage statement of every single employee during the relevant time period was

6    inaccurate"); *see also Smith v. Angelica Corp*., No. 20-CV-01968-PJH, 2021 WL 4987951, at \*2

7    (N.D. Cal. Oct. 27, 2021) (rejecting 100% rate where "Plaintiff's complaint does not expressly

8    allege or infer that every class member would qualify for every subclass or would qualify for

9    every claim within a subclass. In other words, nothing in the complaint supports a calculation

10   where there is a 100% violation rate for the Rest Period, the Waiting Time Penalties, and the

11   Wage Statement Penalties subclasses").

12        As the main case relied on by defendants notes, courts are split on the question of using a

13   100% violation rate based solely on inferences from broad allegations in a complaint. *See*

14   *Mendoza v. Nat'l Vision, Inc.*, No. 19-CV-01485-SVK, 2019 WL 2929745, at \*3 (N.D. Cal. July 8,

15   2019). That inference might be permissible after a "situation-specific" analysis where the claims

16   alleged necessarily indicate that every employee would be subject to the complained-of wage and

17   hour violations uniformly and continuously (or where those allegations are confirmed by evidence

18   submitted by defendants). *Id*. at \*4-5 (approving use of 100% wage statement violation rate based

19   on substantive claim that defendant failed to pay each employee for the required time each

20   employee spent each workday verifying daily hours); *see also Anderson v. Starbucks Corp*., 556

21   F. Supp. 3d 1132, 1138 (N.D. Cal. 2020) (distinguishing cases rejecting use of 100% violation rate

22   as based on "open ended" violations, but applying it to that case given plaintiffs' theory that all

23   store managers were required to have a monthly cell phone plan, an expense not "seriously

24   dispute[d]" by plaintiffs who did not provide evidence that "store managers incurred phone

25   charges in only some but not all months of their employment").

26        Finally, with specific respect to waiting time penalties – which account for the bulk of

27   defendants' amount-in-controversy estimate – the fact that plaintiff's complaint seeks "up to" the

28   full 30-day maximum period does not by itself justify a 100% violation rate. *Compare* Complaint

6

¶¶ 56, 64, 96 ("Plaintiff and Class Members that are no longer employed by DEFENDANTS have an additional claim for waiting time penalties pursuant to Labor Code sections 201-203 for up to 30 days of waiting time penalties on account of DEFENDANTS' ongoing willful failure to pay them"); *with  Dunn v. SHC Servs., Inc.*, 2021 WL 5122057, at *18 (E.D. Cal. Nov. 4, 2021 (identifying split in post-*Arias* ruling "respect to the propriety of the use of a 100% violation rate for a waiting time penalties claim," but concluding that use of "up to" allegation "when viewed within the context of Plaintiff's other allegations tending to suggest a violation rate of less than a 100%, does not reasonably support Defendant's assumption. This deficiency in supporting allegations, combined with the absence of evidentiary support for Defendant's assumption, renders the 100% violation rate assumption unreasonable.").

Here, both sides use a 20% violation rate for the missed meal and rest breaks.  Using a 100% violation rate for the derivative wage statement and waiting time penalty claims is unsupported by the allegations made, the types of claims at issue, and the evidentiary submissions by defendants.[2]

## CONCLUSION

The motion to remand is GRANTED.[3]

---

[2] Defendants presumably could have submitted evidence and made arguments as to plaintiff's other claims – for example the omission from the wage statement of the "true correct name and address of the legal entity that is the employer" or provided its own estimate of how many employees might have been entitled to overtime if their time had properly been accounted for – but referring to their own records, but they chose not to, resting exclusively on wage statement penalties (using a 100% violation rate tethered to the miss meal and rest break claims), waiting time penalties claim (using a 100% violation rate), and the missed meal and rest break claims (using a 20% violation rate).

[3] Plaintiff seeks payment of his attorney fees in moving to remand.  *See* Mot. at 24; *see also* 28 U.S.C. § 1447(c) (granting court the authority to award costs and attorneys' fees incurred as a result of the removal).  That request is DENIED. "[A]bsent unusual circumstances, attorneys' fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005). "But removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorneys' fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). Although defendants' arguments were not compelling, they were not objectively unreasonable.

**IT IS SO ORDERED.**

Dated: September 23, 2022



William H. Orrick
United States District Judge